**In the matter of the Complaint of Kenneth I. MUNYAN As Owner of One 34 Foot 1977 Marine Trader Trawler, Registration No. DL6136C, Serial No. ETY332281077DC, known as the WANDERING GENTILE, For Exoneration From and Limitation of Liability.**

**Civ. A. No. 90–3711 (CSF).**

United States District Court, D. New Jersey.

Jan. 31, 1992.

Gary Francis Seitz, Palmer, Biezup & Henderson, Camden, N.J., for petitioner, Kenneth I. Munyan.

John E. Bradley, Nourse & Bowles, Newark, N.J., for claimant, Venice Amusement.

## MEMORANDUM AND ORDER

WOLFSON, United States Magistrate Judge.

Presently before this court is the petitioner's motion *in limine* to determine the admissibility of public records. This matter is being considered pursuant to Fed. R.Civ.P. 78, and having considered the moving and opposition papers and for the reasons discussed below, the court orders that the petitioner's motion be granted.

## FACTUAL BACKGROUND

The petitioner, Kenneth I. Munyan, is the registered owner of a 34 foot trawler known as the "WANDERING GENTILE." In late August, petitioner and two others were en route from Munyan's home in Galena, Maryland to Lake Champlain, located between New York and Vermont. On the morning of August 19, 1990, the WANDERING GENTILE departed from a marina in Cape May, New Jersey, intending to dock again at Manasquan Inlet, New Jersey. During this journey, the petitioner relates that his vessel had passed the Barnegat Lighthouse at approximately 4:00 P.M. The weather was clear at that time. At about 5:30, however, the vessel encountered black storm clouds and rough seas. At this point, the WANDERING GENTILE was 8 to 10 miles north of Barnegat and about one mile offshore near Seaside, New Jersey. Petitioner decided to ride out the storm and land at Manasquan Inlet as originally intended. The vessel was not experiencing any mechanical difficulty. Thereafter, at about 8:00 P.M., the engine failed and Munyan was unable to restart it. Munyan dropped anchor to prevent the vessel from drifting towards shore. Unfortunately, the anchor failed to hold in the strong wind and high seas, and a radio distress signal was transmitted. As the wind and sea washed the trawler towards shore, the passengers quickly abandoned ship. They were later pulled from the ocean by the Seaside Heights Scuba Team members. The vessel struck the pilings under the Casino Pier at Seaside Heights on the north side, damaging the pier and destroying the vessel.

## PROCEDURAL BACKGROUND

Thereafter, the petitioner, Munyan, filed a petition in admiralty pursuant to 46 U.S.C. Appendix Sections 183–189, for exoneration from or limitation of liability for any claims arising out of this boating accident.[1] The petitioner contends that as a result of severe, unexpected weather encountered in the early evening hours of August 19, 1990, the boating accident and its resulting damage were not due to any fault on his own part, but, rather, was due to an "act of God," and, therefore, he should be exonerated from any liability on claims arising from the accident.

Petitioner now files the present motion *in limine* seeking to admit several investigative reports concerning the boating accident on August 19, 1990, as well as weather reports prepared by public officials regarding the area south of Manasquan Inlet. Petitioner seeks to have these records admitted under the hearsay exception governing public records and reports. Fed. R.Evid. 803(8)(C). Specifically, Munyan seeks to admit the following reports:

1. a Boating Accident Report prepared by the New Jersey State Marine Police;

2. an Investigative Report and a Supplementary Investigation Report prepared by the Seaside Heights Police Department;

3. the U.S. Coast Guard Unit Case File prepared by an unidentified employee concerning the WANDERING GENTILE;

4. a Marine Coastal Weather Log prepared by the U.S. Coast Guard at Manasquan Inlet, and

5. the Bay/Coastal Marine Forecast prepared by the National Weather Service, Philadelphia, for the area from Manasquan Inlet, New Jersey, south to Cape Henlopen, Delaware.

The claimant, Venice Amusement Corp., objects to the admission of these reports and records. First, the claimant asserts that the Police and Coast Guard reports are not sufficiently trustworthy to be admitted into evidence. Further, claimant contends that by admitting these records under Fed. R.Evid. 803(8)(C) without calling the inves-

---

1. The Limitation of Liability Act, 46 U.S.C. Appendix Section 183, permits the owner of a vessel to petition for exoneration form or limitation of liability for loss or damage which results form a collision, provided that the loss occurred without the owner's privity or knowledge. Complete exoneration is granted when there is a finding of no contributory fault. *See Tittle v. Aldacosta,* 544 F.2d 752, 756 (5th Cir.1977); *Complaint of Cirigliano,* 708 F.Supp. 101, 103 n. 2 (D.N.J.1989).

tigating officers to testify, Munyan is baselessly trying to evade his burden of proof at trial. In addition, the claimant objects to the admission of the Bay/Coastal Marine Forecast and the National Weather Service forecast for the area presented by the petitioner, since these forecasts do not give a true or complete picture of the weather observed by Munyan on August 19, 1990. Claimant contends that the weather forecast prepared by the National Weather Service in the New York office for the area north of Manasquan Inlet north to Montauk Point, New York, and Watch Hill, Rhode Island, should also be admitted, so as to present an accurate forecast for the broad area Munyan intended to travel.

## DISCUSSION

### I. ADMISSIBILITY OF POLICE & COAST GUARD REPORTS

■ This court will first address the admissibility of the investigation reports prepared by the Coast Guard, the New Jersey Marine Police and the Seaside Police Department. Since government agencies prepared these reports, their admissibility is appropriately considered under Fed.R.Evid. 803(8). *See United States v. Versaint,* 849 F.2d 827, 831 (3d Cir.1988); *United States v. DePeri,* 778 F.2d 963, 976 (3d Cir.1985) (FBI reports fall under the public record exception to the hearsay rule and are admissible against the government), *cert. denied sub nom Pecic v. United States,* 475 U.S. 1110, 106 S.Ct. 1518, 89 L.Ed.2d 916 (1986). Federal Rule of Evidence 803(8) provides that:

Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there

was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, or (C) in civil actions and proceedings and against the government in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

*Id.* The coast guard and police reports at issue here, fall under Part (C) of this rule.

Rule 803(8)(C) is based on the assumption that public officials perform their duties properly, without motive or interest other than to prepare accurate reports, *Bradford Trust Co. v. Merrill Lynch Pierce Fenner & Smith, Inc.,* 805 F.2d 49, 54 (2d Cir. 1986); *Ellis v. International Playtex Inc.,* 745 F.2d 292, 300 (4th Cir.1984). To exclude evidence which falls under this rule, there must be "an affirmative showing of untrustworthiness, beyond the obvious fact that the declarant is not in court to testify." [2] *Bradford Trust,* 805 F.2d at 54 (quoting *Kehm v. Proctor & Gamble Manuf. Co.,* 724 F.2d 613, 618 (8th Cir.1983)); *see also Keith v. Volpe,* 858 F.2d 467, 481 (9th Cir.1988) (the burden of establishing untrustworthiness is on the opponent of the evidence); *Melville v. American Home Assurance Co.,* 584 F.2d 1306, 1316 (3d Cir.1978).

■ In *Melville,* the Third Circuit noted that official reports are admitted under Rule 803(8), because they are presumed to be generally reliable. The party challenging the validity of an official report admitted under this rule must therefore come forward with some evidence which would impugn its trustworthiness. *Id.* at 1316. *See also Baker v. Elcona Homes Corp.,* 588 F.2d 551, 558 (6th Cir.1978), *cert. denied,* 441 U.S. 933, 99 S.Ct. 2054, 60

**2.** It should be noted, however, that this ruling does not prevent the claimant from calling the police officers or Coast Guard officials to testify at the time of trial. Any concern regarding the thoroughness of the investigations may be addressed during testimony. Quite possibly, Munyan's attempt to admit these reports into evidence serves a purpose of alleviating the need and expense of calling witnesses. It does not,

however, prevent the claimant from having a full hearing on the merits of this matter. The admission of these public records and reports under Fed.R.Evid. 803(8)(C) is an approved exception to the hearsay rule. Therefore, the burden is on Venice Amusement to make an affirmative showing of untrustworthiness beyond the obvious fact that the declarant is not in court to testify.

L.Ed.2d 661 (1979). Thus, an authorized report of a government agency is assumed to be trustworthy absent evidence to the contrary. *Gentile v. County of Suffolk*, 129 F.R.D. 435, 449 (E.D.N.Y.1990); *Kehm*, *supra*, 724 F.2d at 618. However, as with all admitted evidence, "the weight and credibility extended to government reports admitted as exceptions to the hearsay rule are to be determined by the trier of fact." *Bradford Trust*, 805 F.2d at 54.[3]

In the present case, the claimant objects to the admission of the various investigative reports under Rule 803(8)(C) on the basis that it has not been established that the reports were grounded on any factual investigation to support their alleged conclusions. For instance, the police merely questioned the persons on board the WANDERING GENTILE, only as to events that occurred after the vessel encountered the storm and ran aground. No further investigation was pursued. Accordingly, the police reports should not be construed as a "factual finding" necessary to render it admissible under Rule 803(8)(C).

In *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 109 S.Ct. 439, 102 L.Ed.2d 445 (1988), the Supreme Court noted that under Fed.R.Evid. 803(8)(C), "the requirement that reports contain factual findings bars the admission of statements *not* based on factual investigation." *Id.*, 488 U.S. at 169, 109 S.Ct. at 449, 102 L.Ed.2d at 463 (emphasis added). Nevertheless, the Supreme Court has broadly construed "factual findings". *Beech Aircraft* held that factually based conclusions or opinions are not automatically excluded from the scope of this Rule. *Id.*, 488 U.S. at 162, 109 S.Ct. at 446. Opinions and conclusions in official reports

are admissible if they are "based on factual investigation." *Id.*, 488 U.S. at 169, 109 S.Ct. at 449. Therefore, the Court held that "as long as the conclusion is based on a factual investigation and satisfies the Rule's trustworthiness requirement, it should be admissible along with other portions of the report." *Id.*, 488 U.S. at 170, 109 S.Ct. at 450.

The Supreme Court further concluded that the trustworthiness inquiry, not an arbitrary distinction between fact and opinion, is the primary safeguard against the admission of unreliable evidence. *Id.*, 488 U.S. at 167, 109 S.Ct. at 448. "Thus, a trial judge has discretion and, indeed, the obligation to exclude an entire report or portions thereof—whether narrow factual statements or broader conclusions—that she determines to be untrustworthy." *Id.*, 488 U.S. at 167–68, 109 S.Ct. at 448–49.

In determining the trustworthiness of investigative reports, the Supreme Court suggested a nonexclusive list of four factors to consider: "1) the timeliness of the investigation; 2) the investigator's skill or experience; 3) whether a hearing was held; and 4) possible bias when reports prepared with a view to possible litigation." *Id.*, 488 U.S. at 167 n. 11, 109 S.Ct. at 449 n. 11; *see* Advisory Committee's Notes on Federal Rule of Evidence 803–8, 28 U.S.C. Appendix, p. 725. Additionally, the finality of the findings made in the report has been suggested as a fifth criterion of trustworthiness. *See Gentile v. County of Suffolk*, 129 F.R.D. at 450; *Zenith Radio Corp.*, *supra*, 505 F.Supp. at 1147.[4]

Applying the above criteria to the present matter, the police and Coast Guard reports should be deemed admissible under

---

**3.** Although a court may preliminarily determine that an official report is trustworthy, the opponent of that evidence may counter the trustworthiness of the report by introducing such evidence before the jury. Moreover, where the probative value of the report is outweighed by the danger of unfair prejudice, confusion of issues or undue delay, waste of time or needless presentation of cumulative evidence attendant upon the opponent's efforts to establish untrustworthiness of the report, the court may exclude the report under Fed.R.Evid. 403. *See Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, 505

F.Supp. 1125, 1146 (E.D.Pa.1980), *rev'd on other grounds*, 723 F.2d 238 (3d Cir.1983); *John McShain, Inc. v. Cessna Aircraft Co.*, 563 F.2d 632 (3d Cir.1977).

**4.** In *Zenith Radio Corp.*, the court suggested seven additional criteria; however, these factors were not explicitly adopted by the Third Circuit on appeal. *See In re Japanese Elec. Prods. Antitrust Litig.*, 723 F.2d 238, 265 (3d Cir.1983), *rev'd on other grounds*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Fed.R.Evid. 803(8)(C). Under the first factor, the emphasis on timeliness is a means to avoid dependence on stale evidence. The Advisory Committee noted the importance to interview witnesses before memories fade and to inspect physical evidence before it is affected by the passage of time or tampering. *See Gentile v. County of Suffolk*, 129 F.R.D. at 450. Here, there is no dispute that the Seaside Police and New Jersey State Marine Police reports were investigated and reported in a timely manner. Additionally, the Coast Guard's report on the WANDERING GENTILE was promptly investigated and prepared. Thus, the police and Coast Guard reports satisfy the timeliness requirement for trustworthiness.

With regard to the second factor, the claimant has offered no evidence to refute the skill or experience of the police or Coast Guard officials. This burden squarely rests upon the party who opposes admission of the official report. Therefore, the claimant cannot question the trustworthiness of this report by the second factor.

█ Moving to the third factor, the claimants emphasize that no hearings were ever held by the police departments or Coast Guard; however, the type of investigation undertaken by these officials does not typically generate formal hearings. Moreover, a formal hearing is not a *sine qua non* of admissibility under Rule 803(8)(C) when other indicia of trustworthiness are present. *See Baker v. Elcona Homes Corp.*, 588 F.2d at 558. This factor is one of four suggested by the Advisory Committee, it is not an absolute requisite.

Finally, there is no indication that the officials possessed any improper motive in preparing these reports. This fourth criterion has been applied when there is reason to suspect bias. *See Gentile v. County of Suffolk*, 129 F.R.D. at 457. By bias, the courts and the Advisory Committee principally refer to those reports which have been compiled in anticipation of litigation. *Id.* In this instance, the Police and Coast Guard officers are completely independent of both parties in this matter and clearly have no stake or interest in the present litigation. *See, e.g., Dubois v. State Farm Fire & Cas. Co.*, 734 F.Supp. 722, 724 (E.D.La.1990).

█ Interestingly, claimants argue that the self-serving statements made by Munyan, contained in the police reports, render the reports untrustworthy under this fourth criterion. This view is clearly erroneous. The fourth factor principally focuses on the motives of those officials undertaking an investigation, not the witnesses or parties who may have made the statements. Moreover, the fact that some of the sources of information in a report may be biased, does not, in and of itself, render the report untrustworthy so long as the public official who prepared it considered other sources of information and was not biased himself. *Taylor v. Bouchard Transp.* 1991 A.M.C. 2423, 2431, 1991 WL 107279. Here, the Seaside and New Jersey Marine police conducted a thorough investigation of the accident after it had occurred. They investigated the scene, the vessel, the damage to the pier, and communicated with and exchanged information with the rescue squads and the Coast Guard. They did not merely ask Munyan and his two companions what happened and go home. The Coast Guard report, as well, indicates an equally thorough investigation of the accident was undertaken. Moreover, it relates their own data concerning the weather and reports of distress signals received and reported by others. It does not contain statements by Munyan and his companions. Thus, it is clear that the investigative reports prepared concerning the boating accident are trustworthy and the officials were not biased. Claimant's argument more properly addresses the weight and credibility the fact finder will attach to the witness statements contained in the reports at the time of trial, not the general trustworthiness of the reports and investigators themselves.

In sum, the claimant has failed to show any evidence that the police and Coast Guard reports are unreliable or untrustworthy under the criteria above-listed. Therefore, this court having determined that these reports meet the threshold of

trustworthiness,[5] they are admissible under Fed.R.Evid. 803(8)(C). Petitioner's motion in limine is granted.

## II. ADMISSIBILITY OF WEATHER REPORTS AND FORECASTS

Petitioner also requests the court to rule on the admissibility of the Bay Coastal Marine Forecast prepared by the National Weather Service, Philadelphia Office, for the area south of Manasquan Inlet to Cape Henlopen, Delaware. The petitioner contends that these official public records and data compilations concerning the weather are factual findings resulting from investigations made pursuant to authority granted by law. Therefore, they are admissible in their entirety pursuant to Fed.R.Evid. 803(8)(C).

The claimant, Venice Amusement Corp., does not dispute the truthworthiness of the Bay Coastal Marine Forecast for this area, but, rather, asserts that this forecast alone is inadmissible, since it does not portray a complete picture of the weather actually observed by petitioner, Munyan. More concisely, the claimant contends that the weather forecast prepared by the National Weather Service, New York office, for the area north from Manasquan Inlet north to Montauk Point, N.Y. and Watch Hill, Rhode Island, is the appropriate forecast to be admitted, since this was the area from which the storm traveled, as well as Munyan's intended destination.[6]

Clearly, both the Philadelphia and New York weather forecasts are admissible under Fed.R.Evid. 803(8)(C) since they are trustworthy reports of weather conditions. Therefore, this court concurs with claimant that both reports should be admitted under this Rule, to give a complete and accurate forecast for the entire regions where petitioner traveled and intended to make port. Since Manasquan Inlet is at the juncture of two forecast zones, and consideration of one forecast zone by itself would be misleading, this court orders that both forecasts be admitted under *Fed.R.Evid.* 803(8)(C).

## III. SANCTIONS

In its opposition to petitioner's motion, claimant asks the Court to impose sanctions against Munyan for bad faith in (1) filing this petition; (2) denying liability, and (3) making the present motion in limine.[7] Additionally, Venice Amusement contends that Munyan's conduct in refusing to stipulate as to the amendment of Venice Amusement's claim to add Bob Bennett, Inc. as owner and Venice Amusement as the real party in interest, as well as to the order of proof at trial unless the claimant forwarded a copy of the U.S. Army Corps of Engineers' permit on the Casino Pier was without merit and in bad faith. Claimant points out that the petitioner has been in receipt of the Army Corps of Engineers' permit since September of 1991; therefore, their condition that the claimant provide this permit was frivolous. Venice Amusement also reserves its right to seek sanctions at the end of litigation.

5. Despite this court's threshold determination of trustworthiness of the police and Coast Guard reports, admissibility of all evidence, including hearsay exceptions, is always subject to the general rules of relevance and prejudice. *See Beech Aircraft*, 488 U.S. at 167–68, 109 S.Ct. at 448–49. Moreover, admission of a report containing "conclusions" is also subject to the ultimate safeguard, the applicant's right to prevent evidence tending to contradict or diminish the weight of those conclusions. *Id.*, 488 U.S. at 168, 109 S.Ct. at 449.

6. The claimant additionally requests that the court admit the weather pages from The New York Times for the dates August 18 and 19, 1990, in conjunction with the two National Weather Service forecasts covering Manasquan

Inlet. However, this court believes that any weather report from The New York Times would be cumulative and is not as reliable as the forecasts of the National Weather Service. Additionally, the National Weather Service forecasts are routinely and more likely observed by persons navigating the seas.

7. Claimant's request for sanctions is deemed more appropriately as a cross-motion for sanctions. As the claimant failed to file its cross-motion within the time required under the Federal Rules of Civil Procedure and the General Rules of the United States District Court for the District of New Jersey, this court need not make a determination on this issue. Nevertheless, for the sake of expedience, the court will address claimant's request for imposition of sanctions.

Rule 11 provides: "If a pleading, motion or other paper is signed in violation of this Rule, the court, upon motion or upon its own initiative, shall impose upon the party who signed it, a represented party, or both an appropriate sanction...." *Fed.R.Civ.P.* 11. The purpose of this rule is to discourage frivolous pleadings or claims that are legally unreasonable or without factual foundation. *Lieb v. Topstone Indus., Inc.*, 788 F.2d 151, 157 (3d Cir.1986).

This court declines to impose sanctions against either party at this time. It is clear that sanctions against Munyan for bringing the present motion is groundless since this court has granted petitioner's motion in limine. Moreover, in an opinion dated January 21, 1992, the Hon. Clarkson S. Fisher, U.S.D.J., denied Munyan's motion for summary judgment; allowed claimant to amend its status as the lessee and the real party in interest; denied claimant's motion to add the owner of the pier, Bob Bennett, Inc., as a claimant; and held that Munyan has the burden of proving he was not negligent, that the accident was an "Act of God"; and was required to present his evidence first at trial. Sanctions and costs of these various motions by the claimant and petitioner were not awarded. Likewise, this Court finds that sanctions are inappropriate.

### ORDER

It is on this 30th day of January, 1992,

ORDERED that the petitioner's motion in limine to admit official reports into evidence at the time of trial in this matter pursuant to Fed.R.Evid. 803(8)(C), be and is hereby granted as follows:

1. The Seaside Heights Police Department Investigation Report and Supplemental Investigation Report shall be admitted;

2. The New Jersey State Police Boating Accident Report shall be admitted;

3. The Department of Transportation Coast Guard FAR Incident Report folder shall be admitted; and

4. The Bay/Coastal Marine Forecast prepared by the National Weather Service, Philadelphia, PA, for the area south of Manasquan Inlet to Cape Henlopen, *and* the Bay/Coastal Marine Forecast prepared by the National Weather Service, New York area, for the area northeast from Manasquan Inlet to Montauk Point, New York, and Watch Hill, Rhode Island, shall both be admitted, since the area of the boating accident occurred at the juncture of the two forecast zones; and it is further

ORDERED that sanctions are denied.